## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Cause No. CR 25-111-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| TYSON RONDO GRUBER, | |
| Defendant. | |

### INTRODUCTION

A federal grand jury indicted Tyson Rondo Gruber ("Gruber") on one count of prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(3), one count of prohibited person in possession of a firearm in violation of 18 U.S.C. §922(g)(8), and one count of possession of a stolen firearm in violation of 18 U.S.C. §922(j). (Doc. 1.) Gruber filed a motion to dismiss the indictment (Doc. 25.) The Court held a hearing on the motion to dismiss on January 15, 2026. (Doc. 34.)

### BACKGROUND

Law enforcement received a tip on February 12, 2024, that Gruber had been breaking into storage units and trading stolen items for large quantities of methamphetamine. (Doc. 33 at 3.) Law enforcement officers obtained a search

1

warrant and searched Gruber's residence. (*Id.*) Officers seized fentanyl, methamphetamine, drug paraphernalia, cash that appeared to be proceeds of drug sales, and 14 firearms from Gruber's residence. (*Id.*) The state charged Gruber for drug possession and trafficking. (*Id.*) Gruber failed to appear at his arraignment. (*Id.*)

A law enforcement officer from Hill County noticed a vehicle behaving suspiciously in the parking lot of a closed business at 2:00 A.M. on July 24, 2024. (*Id.*) The officer observed the driver of the vehicle start to back out of the parking lot, see the law enforcement vehicle, pull back into the parking lot, recline the driver's seat, and appear to try to conceal himself from the officer. (*Id.* at 4.) The officer approached the vehicle and observed a man in the driver's seat who appeared to be unconscious, or pretending to be unconscious. (*Id.*) The man was sweating profusely and breathing rapidly. (*Id.*) The officer observed a rifle in the back seat of the vehicle. (*Id.*)

The officer knocked on the window and attempted to get the attention of the man in the vehicle for over four minutes. (*Id.*) The officer believed that the man in the vehicle was Gruber based on prior experience. (*Id.*) The officer requested medical assistance as he was concerned for Gruber's wellbeing. (*Id.*) EMTs arrived on the scene and attempted to get Gruber's attention. (*Id.*) EMTs and law enforcement officers broke a passenger window to gain access to the vehicle after

another ten minutes of trying to wake Gruber from outside the vehicle. (*Id*.) Officers removed Gruber from the vehicle and found a knife in his front pocket and what appeared to be a throwing star in his right chest pocket. (*Id*. at 5.)

Officers conducted a field sobriety test on Gruber at the scene. (*Id*.) Gruber passed the sobriety test and the officer stated in his report that Gruber was not "impaired." (*Id*.) The Government asserts that it expects that the officer would testify at trial to "clarify that [] his statement that Gruber was not impaired did not mean that Gruber was not under the influence of methamphetamine, only that he was not in physical danger warranting transporting him by medical vehicle rather than patrol vehicle." (*Id*.)

Gruber was subject to a protective order issued on August 4, 2022. (*Id*.) The Montana state justice court issued an order of protection for Gruber's ex-girlfriend and minor child restraining Gruber from "assaulting, threatening, abusing, harassing, following or stalking" his ex-girlfriend and child for twelve years. (*Id*. at 5-6.) Deputy/Process Server Mark Hernandez at the Gallatin County Detention Center in Bozeman served the protection order on Gruber personally on the same day that the order was issued. (*Id*.)

A grand jury indicted Gruber on October 2, 2025, on one count of prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(3), one count of prohibited person in possession of a firearm in violation of 18 U.S.C.

§922(g)(8), and one count of possession of a stolen firearm in violation of 18

U.S.C. §922(j). (Doc. 1.) The indictment also included a forfeiture allegation

pursuant to 18 U.S.C. § 924(d). (*Id.*) Officers arrested Gruber on October 15, 2025,

and Gruber appeared for his arraignment on October 21, 2025. (Doc. 7.) Gruber

was released from custody on December 21, 2025, with the condition that he

remain at the Connections Corrections Program. (Doc. 23.) Gruber filed a motion

to dismiss the indictment on December 24, 2025. (Doc. 25.)

## LEGAL STANDARD

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an

indictment contain a "plain, concise and definite written statement of the essential

facts constituting the offense charged." F. R. Crim. P. 7(c)(1). An indictment that

contains the following information complies with Rule 7(c): 1) alleges each element

of the crime charged, *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009); and

2) sets forth the essential facts necessary to inform the defendant of what he is

charged, *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993).

These requirements ensure that the defendant possesses sufficient information

to prepare a defense and plead double jeopardy if charged in a different case. *Awad*,

551 F.3d at 935. An indictment that "tracks the words of the statute charging the

offense is sufficient so long as the words unambiguously set forth all elements

necessary to constitute the offense." *United States v. Givens*, 767 F.2d 574, 584 (9th

Cir. 1985). The indictment is to "be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *Id.*

## DISCUSSION

Gruber argues that 18 U.S.C. § 922(g)(3) is unconstitutional on its face and as applied to Gruber. (Doc. 26 at 2.) Gruber further alleges that 18 U.S.C. § 922(g)(3) is void for vagueness as applied to Gruber and violates his Fifth Amendment right to due process. (*Id.*) Gruber also argues that 18 U.S.C. 922(g)(8) is unconstitutional as applied to Gruber. (*Id.*) The Court will address each issue in turn.

## I.    The Constitutionality of 18 U.S.C. §922(g)(3)

Section 922(g)(3) prohibits persons who are unlawful users of, or who are addicted to, a controlled substance from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3). Gruber contends that § 922(g)(3) is unconstitutional both on its face and as applied to him.

### a.  Facial Challenge

Gruber acknowledges that the Ninth Circuit recently decided in *United States v. Stennerson*, 150 F.4th 1276, 1285 (9th Cir. 2025), that § 922(g)(3) is facially constitutional. (Doc. 26 at 5.) Gruber asks the Court to stray from this precedent and find that § 922(g)(3) is facially unconstitutional. (*Id*. at 5-7.) Gruber

argues that because addiction is lifelong disease, § 922(g)(3) acts as a permanent ban on firearm ownership. (*Id*. at 6.) Gruber contends that such a severe prohibition was not envisioned by any historical analog so § 922(g)(3) cannot be constitutional and *Stennerson* was decided incorrectly. (*Id*. at 7.)

The Court recognizes that addiction presents an ongoing, lifelong struggle. The Court sees that § 922(g)(3) may serve as a permanent ban on firearm ownership for those people who suffer from addiction throughout their life. Such realities do not compel the Court to abandon recent precedent. The Ninth Circuit in *Stennerson* reasoned that "the restriction that [§ 922(g)(3)] imposes 'is consistent with the Nation's historical tradition of firearm regulation'" because it is facially constitutional at least when applied to those people who are presently intoxicated. 150 F.4th at 1285 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022)). The Fifth Circuit and Eighth Circuit have reached the same conclusion. *See United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024); *see United States v. Veasley,* 98 F.4th 906, 918 (8th Cir.), *cert. denied*, 145 S. Ct. 304 (2024).

"[To challenge] a statute as facially unconstitutional is the "'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the [law] would be valid.'" *United States v. Rahimi,* 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481

U.S. 739, 745 (1987)). Gruber does not argue that no set of circumstances exists under which § 922(g)(3) would be valid or that *Stennerson* wrongly concluded that constitutional circumstances exist. Gruber has not met the high burden of proving that § 922(g)(3) is facially unconstitutional. The Court declines to abandon binding Ninth Circuit precedent. The Court concludes that § 922(g)(3) proves facially constitutional.

### b. As Applied Challenge

Gruber also challenges § 922(g)(3) as applied to him. Gruber focused his as applied challenge through the factors outlined in *United States v. Harris*, 144 F.4th 154 (3d Cir. 2025). The Court will analyze Gruber's challenge both under the Ninth Circuit's history and tradition test and the Third Circuit *Harris* factors.

### i. History and Tradition

The Second Amendment guarantees that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. No question exists that § 922(g)(3) implicates the ability "to keep and bear Arms" as it provides for a categorical ban on possession of firearms. *Bruen*, 597 U.S. at 32. The Government must overcome the presumption that the Second Amendment constitutionally protects Gruber's possession of firearms. *Stennerson*, 150 F.4th at 1282. The Government must establish that our "historical tradition of firearm regulation" supports § 922(g)(3)'s restriction on gun possession by users of illegal drugs.

*Stennerson*, 150 F.4th at 1282 (citing *Bruen*, 597 U.S. at 24). Modern laws pass this test if they are "'relevantly similar' to laws that our tradition is understood to permit," especially in "[w]hy and how [they] burden the right." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 29). Though our Second Amendment law looks to history and tradition, it is not "trapped in amber." *Rahimi*, 602 U.S. at 691. Modern regulations must rest on historical "principles" but need not be a "historical twin." *Id.* at 692.

*Stennerson* concluded that "our nation's tradition of firearms regulation at least supports restricting possession of firearms by those who are presently intoxicated and, therefore, hindered in their ability to exercise sound judgment and self-control." 150 F.4th at 1285. The Ninth Circuit determined that "the restriction that [§ 922(g)(3)] imposes 'is consistent with the Nation's historical tradition of firearm regulation'" because it is facially constitutional at least in those circumstances. *Id.* (quoting *Bruen*, 597 U.S. at 24). The Court faces the question of whether these same historical analogs also support § 922(g)(3)'s restriction on gun possession as applied to Gruber.

The Court recently addressed two as applied challenges to § 922(g)(3). *See United States v. Devine*, No. CR 24-11-H-BMM, 2025 WL 3563272 (D. Mont. Dec. 12, 2025), and *United States v. Dahl*, No. CR-25-57-GF-BMM, 2025 WL 3564714 (D. Mont. Dec. 12, 2025). The Court determined in both cases that §

922(g)(3) proved constitutional as applied to the defendants. *Devine*, 2025 WL 3563272 at *6; *Dahl*, 2025 WL 3564714, at *6. The Court reasoned that "*Duarte* seems to suggest that any categorical ban may be constitutional if the legislature imposed the ban upon a class of people it perceived to be dangerous." *Devine*, 2025 WL 3563272 at *3. The Court concluded that "[a]mple evidence exists that Congress perceived unlawful drug users to present a 'special danger of misuse' for firearm possession." *Id*. Whether the defendant was presently intoxicated was not a conclusive factor in the Court's analysis in *Devine* and *Dahl*.

The Court further determined that although *Duarte* and *Stennerson* do not explicitly foreclose an as applied challenge to § 922(g)(3), the decisions functionally prevent the success of an as applied challenge to these provisions. *Devine*, 2025 WL 3563272 at *3. The Court concluded that "the only potential as applied challenge by a person charged under § 922(g)(3) would be to argue that they do not qualify as a drug user under the statute." *Id*. Gruber does not appear to be making such a challenge and the Court's additional analysis in *Devine* and *Dahl* demonstrates that such challenges properly present questions for the jury. *Id*. at *4-5. Gruber argues instead that the nature of drug addiction ensures that a person who is once addicted to drugs is properly considered an addict for their entire lives. The Court finds that the principles and reasoning of *Stennerson*, *Duarte*, *Rahimi*, and *Bruen*, in addition to the Court's analysis in *Devine* and *Dahl*, demonstrate that

§ 922(g)(3) is constitutional as applied to Gruber. The Court will address the additional arguments made by the parties.

### ii. Third Circuit Factors

The Third Circuit in *Harris* determined that "history and tradition justify § 922(g)(3)'s restrictions on those who pose a special danger of misusing firearms because they frequently use drugs." *Harris*, 144 F.4th at 156. The Third Circuit remanded the case to the district court as it concluded that it lacked "enough facts to tell whether the law's restrictions [were] constitutional as applied to [the defendant.]" *Id*. The Third Circuit identified several, non-exhaustive factors for the district court to consider in assessing "how [the defendant's] drug use affected his mental state and riskiness." *Id*. at 165. The following factors would be relevant:

- The length and recency of the defendant's use during and shortly before his gun possession;
- The drug's half-life;
- Whether use of the drug affects a person's judgment, decision-making, attention, inhibition, or impulse control;
- Whether the drug may induce psychosis;
- The drug's interference with a user's perception of his own impairment; and
- The long-term physical and mental effects of the use of that drug.

*Id*. *Harris* instructs future courts confronting § 922(g)(3) challenges to consider these factors "in determining whether someone's drug use suggests that he 'likely

poses an increased risk of physical danger to others if armed.'" *Id*. (quoting

*Pitsilides v. Barr,* 128 F.4th 203, 212 (3d Cir. 2025)).

The Court recently analyzed the application of the *Harris* factors with Ninth

Circuit precedent. *Devine*, 2025 WL 3563272 at *4-5; *Dahl*, 2025 WL 3564714, at

*4-5. The Court considered whether it would be appropriate to conduct the fact-

based, individualized analysis pre-trial required by *Harris*. The Court concluded

that *United States v. Grubb*, 135 F.4th 604 (8th Cir. 2025), provided persuasive

reasoning that a pretrial resolution, such as required in *Harris*, would be

appropriate only when the parties have agreed to stipulated facts such that the

factual evidence stands undisputed. *Devine*, WL 3563272, at *4-5.

The lack of procedural guidance from *Harris* further troubles the Court. No

rule of evidence or procedure requires the Government to present all the evidence

in its case at this point in the litigation. *Devine*, WL 3563272, at *4-5. The Court

found persuasive *Grubb*'s reasoning that given the uncertain legal universe and the

standards of Rule 12, "the government is entitled at this juncture to make a fulsome

record on facts surrounding the commission of the offense and any other facts that

may be relevant to resolving a constitutional challenge to § 922(g)(3)." *Devine*,

WL 3563272, at *5 (quoting *Grubb*, 135 F.4th at 608).

The Court has not been persuaded by Gruber to adopt a different approach.

The Court also remains bound by *Duarte*, yet it will address the *Harris* factors to

be thorough and avoid future litigation should the U.S. Supreme Court determine an individualized analysis would be required. The Court briefly will address the *Harris* factors although the parties provided limited argument on the facts.

The available information indicates that Gruber was heavily involved in drug distribution and trafficking and seemingly had been struggling with substance use around the timeframe of the arrest. Law enforcement officers were familiar with Gruber and with Gruber's alleged prolonged and well-known drug use. The facts further indicate that Gruber may have been under the influence of methamphetamine at the time of arrest, although he was not so impaired as to need a medical transport. Gruber's level of impairment at the time of arrest remains in dispute. The law enforcement officer who conducted a field sobriety test noted that Gruber was "not impaired." The law enforcement officer also observed Gruber sweating profusely, breathing rapidly, and presenting completely unresponsive for around 14 minutes to officers' attempts to get his attention from outside the vehicle. Methamphetamine, fentanyl, and drug paraphernalia were found at Gruber's residence around six months before his arrest.

Gruber possessed one firearm at the time of arrest and several more were found at his residence in the months before his arrest. It is both common sense and scientifically proven, that methamphetamine, and to some extent, fentanyl, have serious effects on a person's judgment, decision-making, attention, inhibition, and

impulse control. Methamphetamine, at least when used regularly, can induce psychosis. Each of these drugs interferes with a user's perception of his own impairment. Each one of these drugs also causes some form of long-term effects whether physical or mental. The Court finds that the *Harris* factors demonstrate that § 922(g)(3) is constitutional as applied to Gruber.

### c.  Vagueness Challenge

A criminal law is unconstitutionally void if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). A law is not unconstitutionally vague simply because it is difficult to determine whether it has been violated in a particular case. An unreasonable amount of inderminacy or subjectivity must exist regarding what conduct could be prohibited in the first place. *United States v. Williams*, 553 U.S. 285, 306 (2008).

A strong presumption of a statute's constitutionality exists when a defendant raises a void-for-vagueness argument. *United States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999) (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)). Defendants in the Ninth Circuit are limited to as-applied challenges unless the law implicates First Amendment freedoms. *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004). A statute is not unconstitutionally vague "if its language conveys sufficiently definite warning as to the proscribed conduct when

measured by common understanding and practices." *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993). "In an as-applied challenge, a statute is unconstitutionally vague if it fails to put a defendant on notice that his conduct was criminal." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (quoting *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)) (citation omitted).

*Stennerson* concluded that § 922(g)(3) was not unconstitutionally vague as applied to the defendant because his "drug use was sufficiently consistent, 'prolonged,' and close in time to his gun possession to put him on notice that he qualified as an unlawful user of drugs under § 922(g)(3)." 150 F.4th at 1286. Gruber argues that the same logic does not apply because law enforcement determined that Gruber was not impaired at the time of arrest. (Doc. 26 at 11.) Gruber questions what "close in time" means when applied to his case and argues that the term is too vague to be constitutionally applied to him. (*Id*.)

*Stennerson* provides additional guidance in considering how courts should understand § 922(g)(3). 150 F.4th at 1286-87. *Stennerson* cites extensive case law that provides numerous interpretations of what "unlawful user" means and thus how to apply § 922(g)(3). *Id*. *Stennerson* does not imply that § 922(g)(3) is constitutionally applied only to a defendant who was impaired during arrest, or when there is clear proof of recent drug use. *Id*. *Stennerson* recognizes that courts have rejected vagueness challenges to § 922(g)(3) when a defendant's drug use

was "regular and ongoing[.]" *Id.* at 1287. *Stennerson* cited *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020), which noted "[t]he *uniform rejection* of as-applied vagueness challenges to section 922(g)(3)" and concluded that "simply because it may sometimes be difficult to determine if an individual's drug use meets section 922(g)(3)'s standard for liability does not signify that the statute is impermissibly vague." *Stennerson*, 150 F.4th at 1286-87.

The throughline between *Stennerson* and the large body of case law analyzing § 922(g)(3) is that the statute is not unconstitutionally vague as applied to a defendant who has admitted that they are an addict and has used illegal drugs during the relevant time period. Gruber has admitted to suffering from addiction and there is evidence that he used illegal drugs during the period in which he possessed a firearm. Gruber had a reputation for prior, prolonged, and well-known drug use. A person of ordinary intelligence would have understood that Gruber's conduct violated § 922(g)(3). To the extent Gruber wants to argue that he does not qualify as an unlawful drug user or did not use drugs sufficiently close in time to the incident such that he could not have known he was considered an unlawful drug user, those issues must be raised at trial. The Court remains bound by its previous orders in *Devine* and *Dahl*, which note that pretrial resolution of these factual disputes is possible only when the parties have stipulated to the relevant facts. *Devine*, WL 3563272, at *5 (citing *Grubb*, 135 F.4th at 608). The parties here

have not made such stipulations. Pretrial resolution of these potential factual disputes proves improper. The Court concludes that § 922(g)(3) is not unconstitutionally vague as applied to Gruber.

## II.    The Constitutionality of 18 U.S.C. § 922(g)(8) as Applied to Gruber

Section 922(g)(8) provides in pertinent part that it is unlawful for any person to possess a firearm or ammunition when that person is subject to a court order that:

> "(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)
>> (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>>
>> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."

18 U.S.C. § 922(g)(8). Gruber was charged under § 922(g)(8)(c)(ii). (Doc. 1.)

The U.S. Supreme Court determined in *United States v. Rahimi*, 602 U.S. 680, 692 (2024), that 18 U.S.C.§922(g)(8) is facially constitutional. The U.S.

16

Supreme Court in *Rahimi* held that its analysis "starts and stops with Section 922(g)(8)(C)(i) because the Government offers ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Id*. at 693.

*Rahimi* did not need to decide "whether regulation under Section (C)(ii), Section (C)(i)'s closest neighboring provision, is also permissible." *United States v. VanDyke*, 157 F.4th 1082, 1085 (9th Cir. 2025). The Ninth Circuit and other Courts of Appeal have determined that because much of *Rahimi*'s discussion "is framed with respect to Section 922(g)(8) as a whole,[,]" *Rahimi* "provides the analytical framework applicable to Section (C)(ii) as well as Section (C)(i)." *VanDyke*, 157 F.4th at 1085. The Ninth Circuit concluded that it would be appropriate to apply the *Rahimi* framework in addressing an as-applied challenge to § 922(g)(8)(c)(ii). *Id*.; *United States v. Gordon*, 137 F.4th 1153, 1154 (10th Cir. 2025) (holding that § 922(g)(8)(c)(ii) is facially constitutional based on reasoning from *Rahimi*); *see also United States v. Perez-Gallan*, 125 F.4th 204, 207 (5th Cir. 2024) (same).

Gruber challenges the constitutionality of § 922(g)(8) as applied to him. Gruber has a 12-year protection order filed against him. (Doc. 26 at 14.) Gruber argues that he did not have an "opportunity to participate" in the hearing on the order of protection as required by § 922(g)(8). (*Id*. at 13-14.) Gruber argues that § 922(g)(8) is not constitutional as applied to him because the protection order

hearing did not meet the standards envisioned by Congress or the *Rahimi* court, and does not fit into our history and tradition. (*Id*. at 14.)

The Ninth Circuit already has concluded that § 922(g)(8)(c)(ii) fits into our history and tradition. *VanDyke*, 157 F.4th at 1085. *VanDyke* relies upon *Rahimi* and *Duarte* in concluding that two historical traditions of firearm regulation support § 922(g)(8)(c)(ii). *VanDyke*, 157 F.4th at 1085-86. "The first tradition is individual disarmament based on a judicial determination of dangerousness, as embodied by the surety and going-armed laws relied upon in *Rahimi*." *VanDyke*, 157 F.4th at 1085. "The second tradition is categorical disarmament, as manifested in laws forbidding firearm possession by whole groups of people whom 'the *legislature* deemed dangerous.'" *VanDyke*, 157 F.4th at 1085-86 (quoting *Duarte*, 137 F.4th at 759) (emphasis in *VanDyke*). The Ninth Circuit concluded that *Rahimi*'s reasoning is analogous when the "justification for the entry of the no-contact order against [the defendant]—and thus [the] application of Section 922(g)(8)(C)(ii)—was the state court's implicit determination that [the defendant] posed a threat to the physical safety of his victim and other protected persons." *VanDyke*, 157 F.4th at 1087.

The same reasoning applies here. The Montana state justice court determined that Gruber posed a threat to the physical safety of his victim and other protected persons. Gruber has been subject to a judicial determination of

dangerousness. *VanDyke*, 157 F.4th at 1086. The same reasoning the Court employed in *Devine* and *Dahl* also applies here even without a judicial determination of dangerousness. "*Duarte* and *Stennerson* conclude that it falls within our history and tradition to inflict categorical disarmaments on groups deemed dangerous by the legislature." *Devine*, 2025 WL 3563272 at *3; *Dahl*, 2025 WL 3564714, at *3. "Congress enacted the gun-possession restrictions of Section 922(g)(C)(i) and (C)(ii) 'in light of evidence that domestic violence presents a pervasive problem in American society.'" *VanDyke*, 157 F.4th at 1088 (quoting *United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011)). Gruber was placed in this category of persons for whom firearm possession has been deemed dangerous by the legislature.

Gruber states that he was incarcerated at the time of his protection order hearing and was served at the jail with the order on the day of the hearing. (*Id*. at 13.) Gruber asserts that he was unable to "practically defend himself," despite being summoned in front of the court for the hearing. (*Id*.) Gruber implies that he did not have the knowledge or ability to either file a motion to continue or hire an attorney. (*Id*. at 13-14.) Gruber also argues that the long length of the protection order—12 years—is extreme and, in combination with § 922(g)(8), creates a severe constitutional burden on his Second Amendment rights. (*Id*.)

Gruber's argument fails because *Rahimi* creates no standard that a defendant must have been able to practically defend himself, or have been offered a high-level of participation in the protection order hearing. *Rahimi* distinguished between Second Amendment challenges and due process challenges and reasons it need not address the due process arguments because they were not specifically raised by the defendant. *Rahimi*, 602 U.S. at 701 n.2. The Court will address Gruber's due process-sounding arguments for the sake of thoroughness.

The Ninth Circuit explicitly rejected the argument that § 922(g)(8) requires a proceeding with all the due process protections of a criminal trial. *United States v. Young*, 458 F.3d 998, 1006 (9th Cir. 2006). *Young* emphasizes that the Sixth Circuit and the Eighth Circuit have "similarly resisted attempts to impose greater substantive content on the term 'hearing.'" *Id*. (citing *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003), and *United States v. Lippman*, 369 F.3d 1039, 1042 (8th Cir. 2004), *cert. denied* 543 U.S. 1080 (2005)).

The Ninth Circuit concluded that "actual notice" does not mean "advance notice[,]" or notice that hearing would involve a restraining order. *Young*, 458 F.3d at 1006-07. Notice of the date, time, and location of the hearing, as well as the consequence for failing to appear, is sufficient to meet the "actual notice" requirement. *United States v. Meech*, No. CR 20-13-BU-DLC, 2020 WL 5847011, at *7 (D. Mont. Oct. 1, 2020) (same). The Ninth Circuit further determined that the

"opportunity to participate" does not require "actual participation." *Young*, 458 F.3d at 1007.

The Ninth Circuit noted that the Fifth Circuit and the Seventh Circuit agree that the "plain text of the statute indicates that the 'opportunity to participate' requirement is a minimal one." *Id*. (citing *United States v. Banks*, 339 F.3d 267, 267-68 (5th Cir. 2003), and *United States v. Wilson*, 159 F.3d 280, 284 (7th Cir. 1998)). The Ninth Circuit concluded that the government only needs to prove that the proceeding was one in which the defendant "could have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order." *Young*, 458 F.3d at 1007; *Meech*, 2020 WL 5847011, at 8 (same).

Gruber provides no evidence that the protection order hearing at issue was insufficient based on the *Young* standards. Gruber concedes that he had actual notice of the hearing when he was served at the jail with the notice. Gruber admits that he was summoned in front of the court but provides no evidence that he was unable to participate, or object, to any extent. Gruber was not present at the hearing on the order of protection, yet that does not mean that Gruber lacked the opportunity to object or take additional steps to participate such as filing an order to continue. Gruber was not entitled to counsel, to advance notice of the hearing, or to any additional due process protections other than the minimal level of participation required by the statute. Moreover, nothing in the record indicates that

Gruber made any effort to challenge the order of protection during the three-year period between the issuance of the order on August 4, 2022 (Doc. 26-1), and his indictment in this case on October 2, 2025 (Doc. 1).

The fact that Gruber's protection order remains longer than the protection order served upon the defendant in *Rahimi* does not invalidate the analysis. *Rahimi* emphasized that the temporary nature of § 922(g)(8) was similar to the surety bonds of limited duration from our tradition and history. 602 U.S. at 699. *Rahimi* does not state, or even imply, that a temporary prohibition of longer duration would be different. Gruber's protection order, though longer, still imposed only a temporary and limited restriction on his ability to bear arms. Gruber also was found in possession of a firearm in July 2024 which was less than two years from when the protection order had been issued against him. The facts of Gruber's case fall squarely within set of circumstances approved in *Rahimi*. The Court finds that § 922(g)(8) is constitutional as applied to Gruber.

## CONCLUSION

The Court finds that § 922(g)(3) is constitutional on its face and as applied to Gruber based both on the reasoning and principles employed in *Stennerson* and *Duarte*, and on the *Harris* factors. Ample evidence exists in our nation's history and tradition of categorical bans on classes of people whom the legislature deemed dangerous. Congress considered people suffering drug addiction to fall into a class

of people who presented a "special danger of [firearm] misuse." *Harris*, 144 F.4th at 156. The Court concludes that § 922(g)(3) is not unconstitutionally vague as applied to Gruber. The Court further finds that § 922(g)(8) is constitutional as applied to Gruber based on the reasoning from *Rahimi*, *VanDyke*, and *Young*. The Court will deny Gruber's motion to dismiss the indictment.

## ORDER

Accordingly, **IT IS ORDERED** that Gruber's motion to dismiss the indictment (Doc. 25) is **DENIED.**

DATED this 23rd day of January, 2026.

Brian Morris, Chief District Judge
United States District Court